IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| FELIX FERNANDO GONZALEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:24-CV-83-Z-BR |
| | § | |
| JOHN DOE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DISMISS AMENDED COMPLAINT**

Before the Court is the Amended Complaint (ECF 5) filed by Plaintiff Felix Fernando Gonzalez ("Gonzalez"), alleging violations of his civil rights under 42 U.S.C. § 1983. Gonzalez filed this lawsuit *pro se* while a prisoner at the Gray County Jail in Pampa, Texas, and subsequently was granted permission to proceed *in forma pauperis*. As such, his lawsuit is subject to preliminary screening as provided by the Prison Litigation Reform Act ("PLRA"). Pursuant to such screening and for the reasons stated below, the Magistrate Judge recommends that Gonzalez's Amended Complaint be DISMISSED under 28 U.S.C. §§ 1915 and 1915A.

## I. STANDARD OF REVIEW

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* Section 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

1

A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480, 483-84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the Court accepts well-pleaded factual allegations as true, but does not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold *pro se* plaintiffs to a more lenient standard when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (*citing Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. LEGAL ANALYSIS

### A. Factual Background.[1]

Gonzalez alleges that, on September 12, 2022, he was assaulted by his cellmate while incarcerated in the Gray County Jail. (ECF 5 at 5; ECF 23 at 19). The cellmate hit and threw

---

[1] These background facts are taken from Gonzalez's Amended Complaint (ECF 5) and questionnaire responses (ECF 23 and 33) and are assumed to be true for the purpose of evaluating the merits of Gonzalez's claims. Although the Amended Complaint is written in Spanish, the Court was able to discern his claims, and his detailed questionnaire responses were written in English. Page citations to Gonzalez's questionnaire responses refer to the electronic page number assigned by the Court's electronic filing system.

Gonzalez, causing him to hit his head on the metal bed and lose consciousness. (*Id*.). As a result, he lost blood and suffered a cut lip, loose teeth, weakness, fever, severe headaches and dizziness without receiving medical care from Gray County officials. (ECF 5 at 5; ECF 23 at 19; ECF 33 at 1). He believes he subsequently suffered a stroke due to his head injury, which caused him to be unable to walk. (ECF 33 at 3). He was given oral medication by Gray County for 38 days, which caused him to suffer from stomach bleeding that resulted in a trip to the hospital. (*Id*. at 2-3). He complains that Gray County failed to provide him with a wheelchair or other walking aid. He also alleges that Gray County failed to provide the special diet ordered by his doctor once he received medical care for his bleeding stomach. (*Id.*). Gonzalez acknowledges, however, that Defendants took him to the Gray County clinic, the Pampa Regional Medical Center and a hospital in Amarillo; however, he claims that the quality of the medical care provided at each location was insufficient. (ECF 23 at 4, 8, 21-22).

Gonzalez sued the Gray County Jail, and Gray County officials Gracie Skinner, Joshua Archibald, Tony Kimball, Mrs. Kimball, Michael Taylor and Santos Flores for failing to provide medical care to him. (ECF 5 at 3). He also sued Taylor for using excessive force. Gonzalez later voluntarily dismissed his claims against Tony Kimball, Mrs. Kimball and Santos Flores. (ECF 33 at 1). For the reasons stated below, his claims against the Gray County Jail, Skinner, Archibald and Taylor should be dismissed.

**B.    Suit Against Gray County Jail.**

Gonzalez names the Gray County Jail as a defendant in this case. Under Federal Rule of Civil Procedure 17(b), in order to be sued, a "part[y] must have the capacity to sue or be sued." *See Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993); *see also* FED. R. CIV. P. 17(b) (capacity to sue or be sued). "Federal courts in Texas have uniformly held that entities without a

3

separate jural existence are not subject to suit." *Torti v. Hughes*, 3:07CV-1476-M, 2007 WL 4403983, at * 2 (N.D. Tex. Dec. 17, 2007). "State agencies that may sue and be sued are known as jural entities; non-jural entities are not subject to suit." *Thrasher v. Fort Worth Police Dep't*, No. 4:20-cv-350-SDJ-KPJ, 2021 WL 1139746, at *2 (E.D. Tex. Feb. 22, 2021) (defendant Fort Worth Police Department is a non-jural entity that cannot be sued), *R. & R. adopted*, 2021 WL 1123773 (E.D. Tex. Mar. 24, 2021).

In Texas, jails generally are not legal entities capable of being sued, absent express action by the superior corporation to grant the servient agency with jural authority. *See, e.g., White v. Ermatinger*, No. 3:21-CV-3037-D-BN, 2021 WL 6339266, at *2 (N.D. Tex. Dec. 9, 2021) ("this Court has previously held that the Ellis County Jail is not a jural entity."), *R. & R. adopted*, No. 3:21-CV-3037-D, 2022 WL 94171 (N.D. Tex. Jan. 10, 2022); *Hatton v. Harris Cnty. Jail*, No. CV H-18-1948, 2019 WL 1858826, at *2 (S.D. Tex. Apr. 25, 2019) ("the Harris County Jail … is not a separate legal entity from Harris County and therefore it lacks the legal capacity to be sued"); *West v. Lew Sterrett Just. Ctr. of Dallas Cnty.*, No. 1:15-CV-219-SS, 2015 WL 1651539, at *3 (W.D. Tex. Apr. 14, 2015) ("Federal courts in Texas have uniformly held that entities without a separate jural existence are not subject to suit--and specifically that the Lew Sterrett Justice Center is not a jural entity subject to suit.").

Gonzalez alleges that Gray County Jail failed to provide a medical diet, medicine, a wheelchair and an explanation of medication he did receive from unnamed jail medical staff. (ECF 33 at 2-3). However, he pleads no facts demonstrating a grant of jural authority to the Gray County Jail. In addition, the jail is not liable for the actions of its employees because 42 U.S.C. § 1983 does not impose vicarious liability. *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988). For

these reasons, the claims against the Gray County Jail should be dismissed.[2]

## C.    Supervisory Claims Against Skinner.

Gonzalez sues Skinner because she "is the person in charge of administration." (ECF 23 at 4). It is well established that supervisory officials such as Skinner are not liable for the acts of their subordinates unless they: (1) affirmatively participated in an act that caused a constitutional deprivation, or (2) implemented an unconstitutional policy or custom that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (quotations omitted). Gonzalez does not allege that Skinner created a policy or custom that violated his rights. Therefore, the sole question is whether Skinner was personally involved in a violation of Gonzalez's constitutional rights. The claims against Skinner personally are addressed below; the claims against Skinner as a supervisor should be dismissed.

## D.    Failure to Provide Medical Care.

Gonzalez claims that he was denied medical care by Taylor for two weeks because Skinner was on vacation and unavailable to authorize it. (ECF 23 at 4). When she returned, Skinner apparently authorized a visit to the "Gray County infirmary." (*Id*.). At that time, both Skinner and the nurse refused to take him to the hospital. (*Id*. at 4-5). Gonzalez further alleges that, in response to his requests to Skinner and Archibald for medical care, he was given medicine that caused

---

[2]The Court notified Gonzalez of this defect and gave him the opportunity to name jural entities capable of being sued. However, he was unable to do so. (ECF 23 at 23).

stomach bleeding. (*Id.* at 7). He sues Taylor, Skinner and Archibald for failure to provide medical care.

Pre-trial detainees are constitutionally entitled to their basic human needs, such as the need for medical care. *See Est. of Henson v. Krajca*, 440 F. App'x 341, 343 (5th Cir. 2011) (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)); *see also Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472-73 (5th Cir. 1996). This right to medical care flows from the procedural and substantive due process guarantees of the Fourteenth Amendment, whose protections are at least as great as the Eighth Amendment's protections available to convicted prisoners. *Hare*, 74 F.3d at 639 (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Officials breach this guarantee when they are deliberately indifferent to a detainee's medical needs. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001).

The deliberate indifference standard has both an objective and subjective component. *See Farmer*, 511 U.S. at 834. To establish deliberate indifference, Gonzalez must establish that Defendants were (1) aware of facts from which an inference of an excessive risk to Gonzalez's health or safety could be drawn, and (2) they actually drew an inference that such potential for harm existed. *Id.* at 837; *see also Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show that the official was actually aware of risk of harm and consciously ignored it). Under the subjective prong of this analysis, an official acts with deliberate indifference "only if … he knows that inmates face a substantial risk of serious bodily harm and … he disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). Deliberate indifference is an "extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see also McCormick v. Stalder*, 105 F.3d 1059,

1061 (5th Cir. 1997) ("Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.").

The first element—the objective component—concerns whether a reasonable person would view the detainee's injury as sufficiently serious based on the circumstances. *Farmer*, 511 U.S. at 834). A medical need that is serious enough to satisfy the objective component is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (quotations omitted).

### 1.    Claim Against Taylor.

Gonzalez alleges that Taylor caused a two-week delay in medical treatment between the time Gonzalez was assaulted by his cellmate and the time Skinner returned from vacation and authorized treatment. (ECF 23 at 4). Failure to render medical aid requires (1) deliberate indifference; (2) which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Both the deliberate indifference and substantial harm are necessary elements.

Construing Gonzalez's Amended Complaint and questionnaire responses in a light most favorable to him, the Court finds that the facts alleged do not plausibly allege deliberate indifference by Taylor. Gonzalez claims that, after the assault by his cellmate, he had a bloody lip, loose teeth, a broken tooth, weakness, fever, and high blood pressure. (ECF 23 at 19). He also states that he did not report the assault until the next morning. (*Id*. at 20). He does not claim that he notified Taylor of his symptoms, nor does he state what, if anything, he told Taylor about the assault or about injuries that may not have been visible to Taylor at the time. Accordingly, at best, the only injuries described by Gonzalez in his pleadings that Taylor could have seen (and thus could have been on notice of) were the bloody lip and, perhaps, the broken and/or loose tooth.

Gonzalez does not allege that Taylor was aware of facts from which an inference of an excessive risk to Gonzalez's health or safety could be drawn by failing to provide immediate medical care. Nor has Gonzalez plausibly alleged that Taylor actually drew an inference that such potential for harm existed. Delaying medical treatment for two weeks for a cut lip and a broken or loose tooth— the sole injuries of which Taylor could have been aware, according to Gonzalez's allegations-- does not constitute an excessive risk to Gonzalez's health or safety. An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino*, 239 F.3d at 756 (alterations and internal quotation omitted) (quoting *Farmer*, 511 U.S. at 838). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. Gonzalez fails to state a plausible claim that Taylor was deliberately indifferent by failing to provide immediate medical aid; accordingly, Gonzalez's claim against Taylor should be dismissed.

### 2.    Claim Against Skinner and Archibald.

Gonzalez's claims against Skinner and Archibald amount solely to dissatisfaction with the medical treatment he received, rather than their outright refusal to provide treatment. Courts consistently hold that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. *See, e.g., Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992). Gonzalez's questionnaire responses demonstrate that Skinner promptly attended to his medical needs upon her return from vacation, and that his requests for medical treatment made to Archibald resulted in medicine being provided to him (albeit medicine that ultimately caused a

stomach bleed). (ECF 23 at 7). He admits that he was taken the Gray County clinic, the Pampa Regional Medical Center and a hospital in Amarillo and underwent medical testing; however, he was dissatisfied with the treatment he received at all three locations. (ECF 23 at 4, 21-22).

Although Gonzalez's Amended Complaint does not indicate whether he was a pretrial detainee or convicted prisoner at the time of the incident at issue, the applicable standard to prevail on a claim that his medical care violated the Constitution is the same. In short, an inmate's dissatisfaction with the medical treatment he receives does not state a constitutional violation. *See Winston v. Stacks*, 243 F. App'x 805, 807 (5th Cir. 2007) (per curiam) ("[Prisoner's] dissatisfaction with the treatment he received is insufficient to state a constitutional claim."); *McQueen v. Karr*, No. 02-10553, 2002 WL 31688891, at *1 (5th Cir. Oct. 29, 2002) (per curiam) (affirming dismissal of prisoner's claim based on "dissatisfaction with the treatment offered him"); *Garrett v. Sulser*, No. 6:17cv310, 2019 WL 8500862, at *7 (E.D. Tex. Nov. 4, 2019) (concluding that complaints alleging medical personnel "merely performed a 'cursory' examination" were nothing more than "disagreement and/or dissatisfaction with the medical treatment he received"), *adopted by* 2020 WL 562804 (E.D. Tex. Feb. 5, 2020); *Shipley v. Statton*, No. 1:08-CV-133-C ECF, 2009 WL 1469716, at *4 (N.D. Tex. May 27, 2009) ("[Plaintiff's] dissatisfaction and disagreement with the [care provided] ... does not demonstrate that he was denied treatment."). The fact that Gonzalez believes that his medical treatment was not as good as it should have been is not a cognizable complaint under Section 1983. *See Spears*, 766 F.2d at 181.

Further, the fact that the medicine given to him as a result of his requests to Skinner and Archibald ultimately caused a stomach bleed (ECF 23 at 5, 7) does not change the analysis. At best, a very liberal construction of Gonzalez's allegations might state claims for negligence, which also fails to implicate the Constitution. *See Gobert*, 463 F.3d at 346; *Casher v. Melton,* No. 1:14-

CV-120-C, 2015 WL 3541476, at *4 (N.D. Tex. June 2, 2015) ("Negligence or medical malpractice does not amount to a constitutional violation."); *Martikean v. United States*, No. 3:11-CV-1774-M-BH, 2012 WL 1986919, at *5 (N.D. Tex. Apr. 6, 2012) ("A failure to provide additional treatment may show medical malpractice, but it does not show deliberate indifference because decisions to provide additional treatment are matters of medical judgment."), *R. & R. adopted by* 2012 WL 1992111 (N.D. Tex. June 4, 2012). In any event, Skinner and Archibald would not be vicariously liable for the acts of unnamed medical personnel in prescribing and providing medicine that caused Gonzalez's stomach bleed. *See Bigford*, 834 F.2d at 1220. Gonzalez's claims against Skinner and Archibald should be dismissed.[3]

**E.    Excessive Force Claim.**

Gonzalez alleges that Taylor used excessive force on him by handcuffing him, squeezing his arm and dragging him approximately 100 feet with the help of another officer. He further alleges that Taylor threatened to shoot him with a taser. (ECF 23 at 9, 14). As a pretrial detainee bringing an excessive force claim under Section 1983, Gonzalez must establish "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 500-01 (5th Cir. 2008); *see also Kingsley v. Hendrickson,* 576 U.S. 389, 397 (2015) (To prevail on an excessive force claim, a plaintiff must show "that the force purposely or knowingly used against him was objectively unreasonable."). As a pretrial detainee, Gonzalez "can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate

---

[3]Gonzalez fails to provide any factual support whatsoever to support his conclusory allegations that Skinner "denied me many meals, clean clothes and my medication" and that she "has committed many acts of rape and corruption." (ECF 23 at 4). Accordingly, these allegations fail to state a plausible claim against Skinner and should be dismissed.

governmental objective or that it is excessive in relation to that purpose." *Id.* at 398. In *Kingsley*, the U.S. Supreme Court identified certain factors to consider in determining the reasonableness of an officer's use of force:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397. "In excessive-force claims, the reasonableness of an officer's conduct depends on the 'facts and circumstances of each particular case ....'" *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The court must examine "the reasonableness of the force from the perspective of a jailer who is often forced to make split-second decisions in tense situations." *Fairchild v. Coryell Cty.*, 40 F.4th 359, 363 (5th Cir. 2022).

In addition to showing that the force used was objectively unreasonable, a detainee must show that the use of force caused more than *de minimis* injury. *Lewis v. Williamson County*, 2024 WL 270120, at *5 (W.D. Tex Jan. 24, 2024) (citing *Westfall v. Luna*, 903 F.3d 534, 547, 549-50 (5th Cir. 2018)) (quotations omitted) (Fourth Amendment);[4] *Jones v. Wright*, No. A-22-CV-1303-RP, 2023 WL 4940517, at *4 (W.D. Tex. Aug. 2, 2023) (Fourteenth Amendment); *see also Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011) (holding that a viable Fourteenth Amendment excessive force claim requires that "the plaintiff [must] have suffered at least some form of injury that is more than *de minimis*") (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)

---

[4]The standard for excessive force is the same under both the Fourteenth and the Fourth Amendments: "whether the force was objectively unreasonable in light of the facts and circumstances of each particular case." *Boyd v. McNamara*, 74 F.4th 662, 667 n.3 (5th Cir. 2023), *cert. denied sub nom. Johnson v. Boyd*, No. 23-447, 2024 WL 71987 (U.S. Jan. 8, 2024). Courts may rely on Fourth Amendment excessive force cases when analyzing Fourteenth Amendment excessive force claims. *Id.*

(holding that "[t]he injury must be more than a *de minimis* injury in the context of a Fourth Amendment excessive-force claim)). The kinds of injuries deemed to be *de minimis* include abrasions, back and neck pain, contusions, and heightened blood pressure and heart rate. *Westfall*, 903 F.3d at 549-50. The injury must be evaluated in the context in which the force was deployed. *Glenn*, 242 F.3d at 314.

Gonzalez alleges no facts indicating the circumstances under which the force was used. However, he also fails to allege anything more than *de minimis* injuries in connection with the use of force by Taylor. While Gonzalez alleges that Taylor squeezed his arm with sufficient force to cause Gonzalez to "cry in pain," and that he dragged Gonzalez 100 feet, nowhere does he allege that any injuries caused by Taylor were anything more than temporary pain. Gonzalez does not claim that medical care was needed and denied as a result of Taylor's use of force. (ECF 23 at 14). Taking Gonzalez's allegations as true, he has alleged, at most, *de minimis* injuries that do not rise to the level of a constitutional violation. *See Westfall*, 903 F.3d at 549-50 (recognizing that abrasions, bruises, bloody urine, and high blood pressure and heart rate are *de minimis* injuries insufficient to support an excessive force claim); *Brooks v. City of W. Point, Miss.*, 639 F. App'x 986, 990 (5th Cir. 2016) (finding that abrasions to hands and knees, some neck and back pain, and unspecified problems with asthma are *de minimis* injuries) (Fourth Amendment). Gonzalez alleges no facts to support his conclusory claim that Taylor "starved" him under orders from unnamed superiors. (ECF 23 at 16). Gonzalez has not stated a claim of excessive force against Taylor, and such claim should be dismissed.

Gonzalez's claims that Taylor referred to him as a "Mexican who doesn't have papers" and verbally threatened to tase him also are not cognizable under Section 1983. (ECF 23 at 14-15). The Fifth Circuit has long recognized that verbal threats or harassment made by an officer do not

constitute a basis for a Section 1983 claim. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995) (citing *McFadden v. Lucas*, 713 F.2d 143 (5th Cir. 1983)); *see also Rader v. Lubbock Cty.*, No. Civ. A. 5:01-CV-258-C, 2003 WL 21145788, at *13 (N.D. Tex. Apr. 25, 2003) (quoting *Robertson*, 70 F.3d at 24) (dismissing prisoner's claim that defendant verbally taunted and threatened him because "mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations"); *Watson v. Winborn*, No. 02-10984, 2003 WL 21108479, at *1 (5th Cir. Apr. 21, 2003) (per curiam) ("Verbal threats, name calling, and threatening gestures by prison guards do not amount to a constitutional violation."); *Prescott v. Johnson*, No. 18CV577, 2022 WL 672694, at *14 (E.D. Tex. Mar. 7, 2022) (dismissing Section 1983 claim "regarding verbal threats, name calling, and harassment" for failure to state a claim). Gonzalez fails to state a claim based on Taylor's alleged verbal harassment.

### III. RECOMMENDATION

For the reasons stated above, the Magistrate Judge concludes that Gonzalez's claims should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### IV. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED September 23, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

14